UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL RADFORD, et al.,

                Plaintiffs,

   v.                                     **DECISION AND ORDER**
                                                        09-CV-583S

ERIE COUNTY BOARD OF ELECTIONS, et al.,

                Defendants.
_____

## I. INTRODUCTION

Plaintiffs Samuel Radford III, Halimah Muhammad, and Renee McIntyre are registered voters in Buffalo, New York. Defendants are the Erie County Board of Elections, Erie County Board of Elections Commissioner Ralph M. Mohr, Erie County Board of Elections Commissioner Dennis E. Ward, the New York State Department of Education, and the New York State Department of Education Commissioner Richard P. Mills. (Compl. (Docket No. 1).)

In their complaint, Plaintiffs seek injunctive and declaratory relief nullifying the May 5, 2009, election for the City of Buffalo School Board. (Compl. ¶ 2.) Plaintiffs allege the election was tainted by the improper inclusion of a disqualified candidate, Fred Yellen, on absentee ballots. (Compl. ¶¶ 18-19.)

Pending before this Court is the Motion to Dismiss of Defendants New York State Department of Education ("DOE") and DOE Commissioner Richard P. Mills (Docket No. 7).[1] Also pending before this Court is the Motion to Dismiss of Defendants Erie County

---

[1] In support of their motion, Defendants DOE and Mills have filed a memorandum of law (Docket No. 8) and a Reply Declaration (Docket No. 17).

1

Board of Elections ("ECBOE") and ECBOE Commissioners Ralph M. Mohr and Dennis E. Ward (Docket No. 9).[2]  For the reasons stated below, the motion of Defendants DOE and Commissioner Mills is GRANTED.  The motion of Defendants ECBOE and Commissioners Mohr and Ward is GRANTED.

## II. BACKGROUND

### A. Factual Background

Plaintiffs Samuel Radford III, Halimah Muhammad, and Renee McIntyre are all African-Americans registered to vote in Buffalo, New York. (Compl. ¶¶ 8-10.)  Each of the Plaintiffs voted in the May 5, 2009 election for the Buffalo School Board. (Id.)  Plaintiffs all voted for at-large candidate Bryon McIntyre. (Id.)

The DOE is a New York state agency, and Defendant Mills was, at the time of the School Board election, the Commissioner of the DOE. (See Compl. ¶¶ 14-15.)  According to the DOE, Defendant Mills was replaced as Commissioner by Carole F. Huxley as of July 1, 2009.  (DOE's and Mills' Mot. Dismiss at 2 n.1.)

The ECBOE is an elections board organized under the Erie County Charter, and Defendants Mohr and Ward are ECBOE Commissioners and executive officers.[3] (Compl. ¶¶ 12-13.)

Between February 24 and April 7, 2009, candidates were eligible to file nominating

---

[2]In support of their motion, Defendants ECBOE, Mohr and Ward have filed a memorandum of law (Docket No. 11), the declaration of Defendant Mohr (Docket No. 13), two additional exhibits (Docket No. 13, Exs. 2 and 3), and a reply memorandum (Docket No. 18).  Plaintiffs have filed a joint response to Defendants' motions (Docket No. 15).

[3]All of the individual Defendants have been sued in their official capacities only.  (Compl. ¶¶ 12, 13, 15.)

petitions to run for positions on the Buffalo School Board. (Compl. ¶ 16.) At the conclusion of the nominating process, nine candidates, including Bryon McIntyre and Fred Yellen, had enough valid signatures for their names to appear on the ballot for the May 5, 2009 election. (Compl. ¶ 17.) However, the ECBOE later determined that Mr. Yellen's nominating petitions were invalid, and he was removed from the ballot on or about April 27, 2009. (Id.)

At or about the time Mr. Yellen was disqualified, the ECBOE sent more than 800 absentee ballots to voters who requested such ballots. (Compl. ¶ 18.) The absentee ballots still listed Mr. Yellen as a candidate. (Compl. ¶ 19.) The ECBOE did not take any corrective measures to recall or reissue the absentee ballots that incorrectly included Mr. Yellen. (Id.)

On May 5, 2009, Bryon McIntyre received the third highest number of votes for one of the three at-large School Board positions. (Compl. ¶ 20.) When all of the votes (except for the absentee ballots) were tabulated, Mr. McIntyre maintained a lead of 51 votes over the fourth-place candidate, Florence D. Johnson, and a lead of 58 votes over the fifth-place candidate, Catherine Collins. (Compl. ¶ 21.)

On May 13, 2009, Bryon McIntyre and his representatives were invited to the ECBOE offices to monitor the counting of the absentee ballots. (Compl. ¶ 23.) At that meeting, Mr. McIntyre and his representatives discovered that Fred Yellen had incorrectly been listed as a candidate on the absentee ballots. (Compl. ¶ 24.) Mr. McIntyre objected to the counting of the absentee ballots, but Defendants Mohr and Ward overruled his objection and continued to count the ballots. (Compl. ¶¶ 25-26.)

Fred Yellen received 135 votes from the absentee ballots. (Compl. ¶ 27.) After

factoring in the absentee ballot votes, Bryon McIntyre was surpassed by Florence Johnson, and he ultimately ended up in fifth place. (Compl. ¶¶ 27-28.) The election results were ratified by the ECBOE. (Compl. ¶ 29.)

**B. Procedural Background**

On June 24, 2009, Plaintiffs brought this action seeking immediate injunctive and declaratory relief. Plaintiffs allege they suffered a deprivation of voting rights, and constitutional rights, by virtue of the improper inclusion of Mr. Yellen on the absentee ballots. They contend that this irregularity affected the outcome of the School Board election and/or invalidated the entire electoral process, causing them irreparable harm. (Compl. ¶¶ 33-34.)

Plaintiffs allege violations of the Equal Protection and Due Process Clauses of the 14th Amendment to the United States Constitution, the 15th Amendment to the Constitution, 42 U.S.C. §§ 1981 and 1983, the Voting Rights Act, 42 U.S.C. § 1973, the New York State Constitution, and New York Election Law. (Compl. ¶¶ 35-96.) Plaintiffs seek a declaratory judgment rendering the May 5, 2009 School Board election null and void and nullifying the ratification of the election by the ECBOE. Plaintiffs also seek a permanent restraining order enjoining the DOE from further ratifying the election result. (Compl. at p. 20.)

Defendants DOE and Mills filed a motion to dismiss for lack of federal subject matter jurisdiction and for failure to state a claim upon which relief may be granted. (Docket No. 7.) Defendants ECBOE, Mohr and Ward filed a separate motion to dismiss, arguing that Plaintiffs lack standing to pursue this action, that the Complaint fails to state a claim upon which relief may be granted, and that Plaintiffs are not entitled to injunctive relief.

### III. DISCUSSION

**A. Mootness**

Given that Plaintiffs seek declaratory and injunctive relief relating to an election that took place in 2009, this Court initially will address the question of whether Plaintiffs' claims are moot. Van Wie v. Pataki, 267 F.3d 109 (2d Cir. 2001). "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." Id. at 113 (quoting Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998)).

Plaintiffs are seeking nullification of a School Board election in which three at-large members were elected. Plaintiffs are not seeking compensatory or other damages. See Van Wie, 267 F.3d at 115 n.4 (noting that "plaintiffs in election cases could avoid the potential for mootness by simply expressly pleading that should the election pass before the issuance of injunctive relief, nominal money damages are requested."). Further, the basis for Plaintiffs' claim is an irregularity specific to the May 5, 2009 election that is not likely to recur – *i.e.*, the inclusion of a disqualified candidate on more than 800 absentee ballots.

However, according to the by-laws of the Buffalo City School District, at-large members of the School Board serve five-year terms. See Buffalo City School District By-Laws § 1.3, available at www.buffaloschools.org. As such, the candidates who were elected for the at-large School Board seats in the May 5, 2009 election presumably still are in office, and the challenged election still is affecting Plaintiffs. See www.buffaloschools.org (listing current Board members, including at-large member

Florence D. Johnson). Moreover, although Bryon McIntyre (the candidate for whom Plaintiffs voted) ran in 2010 for one of the district-specific School Board positions, he did not prevail, and he is not currently serving on the School Board. See 2010 City of Buffalo School Board Election Results, Official Tally of Election Results, available at www.elections.erie.gov; see also www.buffaloschools.org. At this time, then, Plaintiffs' claims for declaratory and permanent injunctive relief are not subject to dismissal for mootness.

**B. Standing**

The ECBOE and Commissioners Mohr and Ward argue that Plaintiffs lack standing to challenge the election results.[4] The standing requirement derives from the definition of judicial power under Article III of the Constitution, which extends only to cases or controversies. Kalsson v. Fed. Election Comm'n, 356 F.Supp.2d 371, 373 (S.D.N.Y. 2005) (citing U.S. Const. art. III). Plaintiffs must have Article III standing in order for this Court to exercise subject matter jurisdiction over any of the claims they assert in this case. Crist v. Comm'n on Presidential Debates, 262 F.3d 193, 194 (2d Cir. 2001) (*per curiam*) ("The United State[s] Constitution requires that anyone seeking to invoke federal jurisdiction over his complaint have standing to do so.").

To establish standing, Plaintiffs must first show they have suffered an "injury in fact" – *i.e.*, an invasion of a legally protected interest that is concrete and particularized. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citing, *inter alia*, Allen v. Wright, 468 U.S. 737, 756, 104 S.Ct. 3315, 82 L.Ed.2d 556

---

[4]In their reply declaration, Defendants DOE and Mills join the other Defendants in challenging Plaintiffs' standing.  (Reply Decl. ¶ 8.)

(1984)).  The injury must be actual or imminent, not conjectural or hypothetical.  Id. (citing Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).  Second, Plaintiffs must show a causal connection between the injury and the conduct complained of:  the injury must be fairly traceable to the challenged conduct of the defendant.  Id. at 560-61.  Third, it must be likely, and not merely speculative, that the injury will be "redressed by a favorable decision."  Id. at 561 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Id. (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

The relevant question here is whether the inclusion of an ineligible rival candidate on the absentee ballots caused a legally cognizable injury to voters who indisputably were able to cast their votes for their desired candidate.  The Court of Appeals for the Second Circuit and other courts have held that a voter does not have a legally cognizable injury when the voter's harm is merely derivative of harm suffered by a candidate him- or herself.  In Crist v. Commission on Presidential Debates, the plaintiff, a voter, sought to invalidate the policy of the Commission on Presidential Debates ("CPD") limiting participation in CPD-sponsored presidential debates to candidates demonstrating a particular measure of popularity.  262 F.3d at 194.  In dismissing for lack of standing, the court stated:

> [A] voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate.

Id.; see also Berg v. Obama, 586 F.3d 234, 239 (3d Cir. 2009) (voter did not have standing

to challenge Barack Obama's eligibility to run for President; "Berg was not directly injured because he could always support a candidate he believed was eligible"); Becker v. Federal Election Comm'n, 230 F.3d 381, 389-90 (1st Cir. 2000) (holding that voters supporting presidential candidate Ralph Nader lacked standing to challenge Nader's exclusion from a presidential debate); Gottlieb v. Federal Election Comm'n, 143 F.3d 618, 622 (D.C. Cir. 1998) (voters did not have standing to challenge the dismissal of an administrative claim alleging illegal receipt of federal matching funds by a candidate); Hollander v. McCain, 566 F.Supp.2d 63, 65, 68 (D.N.H. 2008) (holding that a voter lacked standing to challenge John McCain's eligibility to run for President; "To be sure, courts have held that a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election. But that notion of 'competitive standing' has never been extended to *voters* challenging the eligibility of a particular candidate.") (emphasis in original) (internal citations omitted).

  Similarly, in analyzing so-called "competitor standing," the courts will look to whether the plaintiff is in the competitive arena of the party who allegedly has been given an unlawful advantage. In Gottlieb, the Court of Appeals for the D.C. Circuit stated that a plaintiff alleging "competitor standing" must "show that he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit." 143 F.3d at 621 (quoting *In re* United States Catholic Conference, 885 F.2d 1020, 1029 (2d Cir. 1989)). The Gottlieb court ruled that a political action committee-plaintiff, AmeriPAC, lacked standing to challenge the grant of federal matching funds to a rival candidate's campaign, because AmeriPAC had never been eligible to receive matching

funds itself, and therefore was not a "competitor."[5]  Id. at 621; see also Becker, 230 F.3d at 386, 389-90 (ruling that presidential candidate Ralph Nader had standing, as a competitor, to challenge debate commission's policies, but that voters did not); Hollander, 566 F.Supp.2d at 68 (noting that a candidate or his political party has standing to challenge the inclusion of an ineligible rival on the ballot based on "competitor standing").

Additionally, in cases where there is a challenge to a political ballot's inclusion or exclusion of candidates, courts draw a distinction between the standing of voters whose preferred candidate has been improperly excluded from the ballot and the standing of voters who object to the inclusion of a rival candidate (as alleged here).  "While the exclusion 'directly imping[es] on the voters' ability to support' their chosen candidate – after all, they cannot vote for somebody who is not on the ballot – the mere inclusion of a rival does 'not impede the voters from supporting the candidate of their choice' and thus does not cause the legally cognizable harm necessary for standing."  Hollander, 566 F.Supp.2d at 68-69 (quoting Gottlieb, 143 F.3d at 622).  "[V]oters have no standing to complain about the participation of an ineligible candidate in an election, even if it results in the siphoning of votes away from an eligible candidate they prefer."  Id. at 69.

In light of this authority, this Court concludes that Plaintiffs have failed to assert a legally cognizable injury and therefore lack standing to pursue this action.  First, Plaintiffs allege an injury that solely is derivative of the harm suffered by their preferred candidate, Bryon McIntyre.  Mr. McIntyre himself might have had standing to challenge the validity of the election based on Mr. Yellen's inclusion on the ballot.  But that standing does not flow

---

[5] The court also ruled that four individual voters lacked standing to appeal the denial of an administrative challenge, because they had not suffered direct harm as a result of the grant.  143 F.3d at 621-22.

to voters supporting Mr. McIntyre. Crist, 262 F.3d at 194. In the same vein, Plaintiffs, as voters, are in not the same competitive arena as the allegedly ineligible candidate, Mr. Yellen. As such, Plaintiffs cannot claim "competitor standing" here. Gottlieb, 143 F.3d at 621; Becker, 230 F.3d at 389-90.

Furthermore, Plaintiffs are challenging the inclusion of an ineligible rival candidate on the ballot, not the exclusion of their preferred candidate from the ballot. Plaintiffs were able to, and did, cast their votes for Mr. McIntyre. Any claimed injury based on the alleged siphoning of other people's votes away from Mr. McIntyre is too attenuated to provide the basis for standing. Gottlieb, 143 F.3d at 622; Hollander, 566 F.Supp.2d at 68-69.

Although Plaintiffs have the burden of establishing standing, they do not directly respond to Defendants' standing arguments in their papers. However, in the Complaint Plaintiffs describe their alleged injury as a dilution of their voting power as citizens and, more particularly, as African-Americans. (See Compl. ¶¶ 33, 37-38, 49-50, 56-57, 65-66, 75-77, 81-82, 87-88, 94-96.) The "vote dilution" theory is not a legally cognizable injury here. There is no dispute that Plaintiffs, and all others in the African-American voting community, were able to cast their votes for the at-large School Board candidates of their choice, including Mr. McIntyre. See Becker, 230 F.3d at 390 (because voters still could cast their votes for their candidate of choice, the alleged "harm" caused by voters' preferred candidate having a lower chance of being elected was not legally cognizable). Moreover, although Mr. McIntyre did not prevail, another African-American candidate, Florence Johnson, did. (Def. ECBOE, Mohr, and Ward's Mot. Dismiss. at 12.) While the Complaint makes the conclusory allegation the African-American community has been prevented from electing "the candidates of their choice," (see Compl. ¶¶ 38, 50), there is no allegation that

Mr. McIntyre (and not Ms. Johnson) was the preferred candidate of the African-American community, as opposed to the preferred candidate just of *Plaintiffs*. Nor is there any specific allegation that the inclusion of Mr. Yellen on the ballot somehow disabled the African-American community from electing their preferred representatives. See Thornburg v. Gingles, 478 U.S. 30, 51, 106 S.Ct. 2752, 96 L.Ed.2d 25 (1986) (to prove vote dilution it must be shown, *inter alia*, that the minority group "usually" was deprived of the ability to elect their preferred candidate(s)). Under the circumstances alleged, Plaintiffs cannot claim to have suffered the injury of "vote dilution" in this election. Rather, the thrust of Plaintiffs' claimed injury is that *their* preferred candidate had a lower chance of being elected as a result of Defendants' conduct. This injury is not legally cognizable in federal court.[6]

Again, had Mr. McIntyre been improperly excluded from some or all of the ballots, his supporters might have had standing to challenge the election based on their inability to vote for their candidate of choice. The inclusion of an extra, ineligible candidate on the ballot, however, did not interfere with Plaintiffs' ability to vote for Mr. McIntyre. As such, Plaintiffs have not suffered a legally cognizable injury, and therefore do not have standing to challenge the election in federal court. This Court lacks subject matter jurisdiction over this action.

---

[6] Even if Plaintiffs were permitted to rely on derivative standing based on the alleged harm suffered by Mr. McIntyre, it is uncertain whether Mr. McIntyre himself suffered a redressible injury. Defendants have submitted evidence of the tally results from the 800 challenged absentee ballots. On those 800 ballots, Mr. Yellen received 135 votes. (Decl. of Commissioner Mohr (Docket No. 13) ¶ 15.) Of those 135 voters, 42 *also* voted for Mr. McIntyre (each voter was permitted to vote for three at-large candidates). (Id. ¶ 16.) Additionally, 10 of those 135 voters voted for only two candidates, and therefore affirmatively chose not to vote for Mr. McIntyre, despite having the opportunity to do so. (Id. ¶ 17.) This leaves 83 votes that could have gone toward Mr. McIntyre had Mr. Yellen's name not been on the ballot. Mr. McIntyre, however, lost to Ms. Johnson by a total of 89 votes. (Id. ¶ 18.) Thus, even if all 83 voters on the disputed ballots had voted for Mr. McIntyre, he still would have been defeated.

## IV. CONCLUSION

For the foregoing reasons, this case must be dismissed. Accordingly, the motion of Defendants DOE and Mills to dismiss will be granted, and the motion of Defendants ECBOE, Mohr, and Ward to dismiss also will be granted.

## V. ORDERS

IT IS HEREBY ORDERED, Defendant DOE and Mills' Motion to Dismiss (Docket No. 7) is GRANTED.

FURTHER, that Defendant ECBOE, Mohr, and Ward's Motion to Dismiss (Docket No. 9) is GRANTED.

FURTHER that Plaintiffs' Complaint is dismissed in its entirety, for the reasons stated above, and the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:      September 25, 2011
            Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                    Chief Judge
                                                United States District Court